**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**(NORTHERN DIVISION)**

| | |
|---|---|
| **LAMAR MACKALL**<br>1606 Gray Haven Court<br>Dundalk, Maryland 21222<br>*Resident of Baltimore County*<br><br>and<br><br>**RYAN HUNTER**<br>4905 Chavellon Road<br>Apt. C8<br>Baltimore, Maryland 21207<br>*Resident of Baltimore County*<br><br>       Plaintiffs,<br><br>***Individually and on Behalf of All***<br>***Similarly Situated Employees***<br><br>v.<br><br>**SAFELITE GROUP, INC.**<br>1105 Schrock Road<br>Columbus, Ohio 43229<br><br>Serve:  CSC-Lawyers Incorporating Service<br>        Company<br>        7 St. Paul Street, Suite 820<br>        Baltimore, Maryland 21202<br><br>       Defendant. | <u>Jury Trial Requested</u><br><br><br><br>Collective/Class Action Claim<br><br><br><br><br><br>Civil Action No.: |

## COLLECTIVE AND CLASS COMPLAINT FOR WAGES OWED

LAMAR MACKALL and RYAN HUNTER,  Plaintiffs, by and through their undersigned

counsel and The Law Offices of Peter T. Nicholl, on behalf of themselves and all others similarly

situated, hereby submit their Complaint against SAFELITE GROUP, INC., Defendant, to recover

unpaid wages, liquidated damages, interest, reasonable attorneys' fees and costs under Section

16(b) of the Federal Fair Labor Standards Act of 1938, as amended, 29 U.S.C. §§ 201, *et seq.* (hereinafter, "FLSA"); unpaid wages, liquidated damages, interest, reasonable attorneys' fees and costs under Maryland Wage and Hour Law, Md. Code Ann., Lab. & Empl. §§ 3-401, *et seq.* (hereinafter, "MWHL"); and unpaid wages, interest, treble damages, reasonable attorneys' fees and costs under the Maryland Wage Payment and Collection Law, Md. Code Ann., Lab. & Empl., §§ 3-501, *et seq.* (hereinafter, "MWPCL"), and in support thereof, state as follows:

## INTRODUCTION AND BACKGROUND

Defendant provides automobile maintenance services to customers across the United States. Defendant's business primarily consists of repairing side windows and windshields. Defendant employs a wide range of technicians to assist with installations and repairs. Occasionally, technicians are directed to perform their duties at Defendant's shops. More often, they are required to travel to a customer's home or business. Defendant's business model centers on its technicians performing their services on-site.

Plaintiffs and others similarly situated were employed as technicians. Their duties centered on performing glass repair and replacement at the location of a customer's request. Their job assignments were created by way of "tickets." Tickets were distributed to Plaintiffs and other technicians through company issued cellular phones. Upon receiving their tickets, technicians gathered their needed supplies and drove to the customer's location. They would then perform their repair work and collect payment. Plaintiffs and other technicians typically worked alone or in small groups. This was dependent upon the type of repair work delineated within each service ticket.

Plaintiffs and other technicians were encouraged to complete as many service tickets as possible. Although they were paid an hourly rate, each ticket provided the opportunity to earn

commission. This opportunity resulted in Plaintiffs and other technicians working overtime consistently.

Plaintiffs and other technicians were not properly compensated for the overtime they worked. Defendant refused to pay Plaintiffs and other similarly situated employees overtime wages. This resulted from a scheme developed by Defendant. Defendant created a common policy known as "Ronnie's Forty Hour Plan" ("Forty Hour Plan"). The policy was implemented throughout the entire Mid-Atlantic region, including Maryland, Delaware and Virginia. It was overseen by Defendant's agent Ronald Wamhoff ("Wamhoff"), the District Manager for the region.

Defendant's Forty Hour Plan denied Plaintiffs and others similarly situated overtime payments. Under this policy, Plaintiffs and other technicians were required to work uncompensated overtime. It was known as the Forty Hour Plan because regardless of how many hours they worked each week, Plaintiffs' and other technicians' timecards were revised to reflect they only worked forty (40) hours. Plaintiffs' supervisors were responsible for this illegal act. It was a common practice throughout Plaintiffs' and other technicians' employment.

Technicians who did not consent to the Forty Hour Plan were punished. This included being given less work. Since a portion of the technicians' compensation was based on commission, not receiving regular work would significantly impact their pay. Technicians who failed to cooperate with Defendant's Forty Hour Plan would be sent home first if there were no jobs. Defendant did this to penalize those that did not abide by its unlawful policy. If they were to work and make money, Plaintiffs and other technicians had no choice but to comply with Defendants' Forty Hour Plan.

Defendant's unlawful practice had the direct effect of cheating Plaintiffs and other technicians out of their wages daily. Defendant was able to avoid paying the wages owed to its technicians through its illegal scheme. This scheme conflicts with the standards set forth by the FLSA, MWHL and the MWPCL.

Defendant is well aware of the illegality of its practices. This resulted in Defendant making recent changes to its wage policies. One of these changes was eliminating the Forty-Hour Plan. Even with this change, Defendant has still refused to pay its technicians for the overtime wages they earned previously. Plaintiffs and other technicians have failed to receive any back pay. These conditions necessitated the filing of this Complaint.

## THE PARTIES

1.      Plaintiff Ryan Hunter (hereinafter, "Hunter") is an adult resident of Baltimore County, Maryland.

2.      Plaintiff Lamar Mackall (hereinafter, "Mackall") is an adult resident of Baltimore County, Maryland.

3.      Defendant Safelite Group, Inc. (hereinafter, "Defendant") is in the business of automobile glass repair and replacement.[1]

4.      Defendant's principal office is in Columbus, Ohio.

5.      Defendant maintains a team of technicians at over one hundred (100) locations across the United States.

6.      Defendant maintains seventeen (17) locations in Maryland alone.

---

[1] Any reference to Defendant shall include its corporate officers and all those empowered to act as agents of the corporation, either explicitly or implicitly, or who are designated as agents under the doctrine of apparent agency. To the extent individual agents are responsible for any actions alleged in this Complaint, they are hereby incorporated by reference within the term "Defendant."

7. Plaintiff Mackall was employed at Defendant's Columbia location.

8. Plaintiff Hunter was employed at Defendant's Woodlawn, Reisterstown and Columbia locations.

9. Due to the nature of its business, Defendant is subject to the FLSA, MWHL and the MWPCL. Defendant's business meets the definition of a retail or service establishment.

10. Defendant's annual dollar volume of business exceeds five hundred thousand dollars ($500,000.00).

11. At all times relevant to this Complaint, Plaintiffs engaged in interstate commerce. This is based on the nature of the duties they performed as part of their employment with Defendant.

12. Plaintiffs worked for Defendant who, at all times throughout Plaintiffs' employment, fell within the definition of the term "employer" under the FLSA, 29 U.S.C. § 203(d), MWHL, § 3-401(b) and the MWPCL, § 3-501(b).

13. At all times relevant, Plaintiffs and others similarly situated worked as non-exempt employees for Defendant. The duties assigned to Plaintiffs and all others similarly situated do not satisfy the duties tests contained within the exemptions specified in the FLSA, MWHL, or the MWPCL.

14. From June 2006 to June 2017, Plaintiff Hunter was employed by Defendant as a technician.

15. From June 2013 to May 2017, Plaintiff Mackall was employed by Defendant as a technician.

16. At all times relevant to this Complaint, Defendant controlled the administration of its business and set employee schedules, including those of Plaintiffs and others similarly situated.

17.     Defendant's agents were, individually and together, actively engaged in the management and direction of Plaintiffs and other similarly situated employees.

18.     Defendant possessed and exercised authority to determine the hours worked by Plaintiffs and others similarly situated.

19.     Defendant had the authority to control Plaintiffs' tasks and the tasks of others similarly situated.

20.     Defendant had and exercised the power and authority to change the course of Plaintiffs' and other similarly situated employees' duties.

21.     Plaintiffs and members of the putative classes recognized Defendant's authority and obeyed Defendant's instructions.

22.     Defendant made all decisions relating to Plaintiffs' and other similarly situated employees' rates and methods of pay.

## JURISDICTION AND VENUE

23.     Original jurisdiction in this Honorable Court is expressly provided by FLSA, 29 U.S.C. § 207, *et seq*.  This Court also has subject matter jurisdiction under 28 U.S.C. § 1331, as this matter presents a federal question.

24.     Discretionary supplemental jurisdiction of Plaintiff's Maryland state law claims is provided by 28 U.S.C. § 1367(a); the state law claims form part of the same case or controversy and derive from a common nucleus of operative facts, on which Plaintiff's federal claims are based.

25.     No reasons exist that would force this Honorable Court to decline jurisdiction; the state law claims (i) do not raise novel or complex issues of state law, (ii) do not substantially predominate the claims over which this Honorable Court has original jurisdiction and (iii) no

exceptional circumstances exist that would constitute a compelling reason for declining jurisdiction, thereby satisfying 28 U.S.C. 1367(c).

26.     Pursuant to 28 U.S.C. § 1391(b), venue is appropriate; the unlawful acts central to this matter occurred primarily within the State of Maryland.

27.     This Honorable Court has personal jurisdiction over Defendant; Defendant is a corporation incorporated under the laws of Maryland. Defendant conducts sufficient business within the forum state so as to constitute a submission to its laws.

## FACTUAL ALLEGATIONS FOR ALL CLAIMS

28.     Defendant's is in the business of automobile glass repair and replacement. Defendant serves customers nationwide.  To assist with the needs of its customers, Defendant employs hundreds of technicians.

29.     Plaintiffs were employed as technicians.

30.     Plaintiffs' and other technicians' duties ranged from the full removal of windshields and windows to routine repairs and maintenance. Their duties were performed at Defendant's shops or on-site.  It was common for Plaintiff Hunter and other technicians to drive to an individual customer's location.  They also routinely drove to car dealerships and repair shops to complete their assignments.

31.     Plaintiffs and other technicians were equipped with company vans and a wide range of repair tools.  This includes equipment capable of fixing minor cracks and replacement tools designed to remove entire windshields.

32.     Plaintiffs and other technicians received their job assignments either in person or through an application on their company-issued cellular phones.  Each new assignment was

referred to as a "service ticket." Each ticket would delineate the scope of work to be provided and the customer who was to receive it.

33.     Plaintiffs and other technicians received numerous service tickets throughout their day. Plaintiffs and other technicians were responsible for completing all of their tickets prior to leaving each day. This was true regardless of how long it took to complete their assignments. Defendant strictly enforced this policy throughout Plaintiffs' employment.

34.     To learn their trade, for the first few months of their employment, Plaintiffs and other technicians went through training. They would shadow more experienced technicians and receive instructions on how to perform their tasks.

35.     During the training period, Plaintiffs and other technicians received an hourly rate. Once they completed training, they became eligible to earn commissions.

36.     Commissions were paid on a piece-rate basis. Each commission was specific to the windshield or window being repaired or installed. Each particular item had its own set commission rate. For instance, in 2014, a full windshield was valued at thirty-two dollars and fifty cents ($32.50) in commission.

37.     Once the total value of commissions exceeded their base hourly rate, Plaintiffs and other technicians were paid a commission on every sale over their base hourly rates. This portion was designated as a commission on their paychecks. Defendant referenced this compensation package as "Pay for Performance" (hereinafter, "PPP").

38.     This compensation structure was implemented throughout the entirety of Plaintiffs' employment. The compensation method was applicable to all of their job assignments.

39.     Plaintiffs and other technicians satisfied the requirements of their assignment and adequately performed their duties to benefit Defendant, as well as the Defendant's customers.

40.     Plaintiff Hunter began his employment in 2006. For the first two (2) months of his employment, Plaintiff Hunter was paid a training rate of eleven dollars ($11.00) per hour. Following training, Hunter was also paid commissions pursuant to the formula described above.

41.     From 2007 to 2013, Plaintiff Hunter was paid eleven dollars and seventy-five cents ($11.75) an hour, plus commissions.

42.     From 2013 to 2017, Plaintiff Hunter's hourly rate was approximately fifteen dollars ($15.00) in addition to commissions.

43.     From February 2017 until the termination of his employment, Plaintiff Hunter was paid sixteen dollars and twenty-five cents ($17.50) per hour, plus commissions.

44.     Plaintiff Mackall's employment began in June 2013.

45.     Following the time he completed training until April 2015, Plaintiff Mackall was paid sixteen dollars ($16.00) an hour. He also received commissions.

46.     From April 2015 to April 2016, Plaintiff Mackall was paid seventeen ($17.00) an hour, plus commissions.

47.     From April 2016 until the end of his employment, Plaintiff Mackall was paid an hourly rate of seventeen dollars and seventy-five cents ($17.75), as well as commissions.

48.     Plaintiffs and other similarly situated technicians were routinely scheduled to work six (6) days a week. Each day, their shifts typically lasted for eight (8) to nine (9) hours. It was not uncommon for their shifts to last even longer.

49.     Plaintiffs and other technicians were always scheduled to work at least forty (40) hours a week. Plaintiffs and others similarly situated frequently worked as many as fifty (50) hours each week. There were times when they worked even more.

50.     The nature of their employment required Plaintiffs and other technicians to work excessive hours.  There were numerous conditions that contributed to the excessive hours they worked.  Prolonged periods of inclement weather was one (1) such factor.  Rioting, looting and other hazardous conditions were others.  A combination of these factors caused Plaintiffs and other technicians to frequently work hours outside of their schedules.

51.     During many periods, need for automobile glass repair was near constant. Defendant would be flooded with phone calls from customers in need of repair work.  This would result in an influx of service tickets.  Due to the increased number of service tickets they received, Plaintiffs and other technicians would find themselves working substantial hours.  To complete all of their assigned tickets, they had no choice but to work overtime.

52.     Plaintiffs and other technicians were not fully compensated for working overtime. They were rarely paid for working more than forty (40) hours a week.  They typically only received their regular rate of pay for up to forty (40) hours of work.  They were not paid "time and a half" their regular hourly wage rates.  They were not paid a rate of one and one half (1.5) their base commission rate on commission work performed outside of those forty (40) hours.

53.     Plaintiffs and other technicians would only rarely receive payments for working overtime.  Plaintiffs and other technicians would only receive straight commissions. They were denied their regular rate of pay altogether. They were forced to work off the clock.

54.     There is no justifiable basis for Defendant's technicians to have had to perform work off the clock.  Plaintiffs and other technicians should have received overtime ("time and a half") wages for every hour worked over forty (40) each week.

55.     Defendant refused to pay Plaintiffs and other technicians overtime wages for the sole purpose of saving the company money.  This accomplished through Defendant's illegal policy.

56.     The policy was developed to ensure Plaintiffs and other technicians would work unpaid overtime.  The policy was instituted by Defendant's regional manager, Ronald Wamhoff (hereinafter "Wamhoff").  It was referred to as "Ronnie's Forty Hour Plan" ("Forty Hour Plan" or "Plan").  The Plan achieved its purpose of denying Plaintiffs and other technicians the overtime wages they earned.  This was done by simply not paying Plaintiffs and other technicians for all of the hours they worked.

57.     Pursuant to the policy, Plaintiffs and other technicians were to only receive their base hourly rate for up to forty (40) hours of work.  They were prohibited from being paid anything more.

58.     To enforce the policy, Defendant's agents engaged in a series of unlawful practices. They would use their discretion in distributing service tickets to punish those who chose not to comply with the Forty Hour Plan. Defendant could simply stop issuing service tickets to those who did not comply with the policy.  Defendant had the power to deny Plaintiffs and other technicians work altogether.  This way, Defendant could ensure that it would not be challenged for not compensating Plaintiff and other technicians for overtime.  Due to the fact that a portion of Plaintiffs' and other technicians' pay was from commissions, being denied work could significantly impact their income.

59.     Defendant engaged in other unlawful practices to achieve its purpose.  Defendant's upper management officials would alter Plaintiffs' and other technicians' timecards.  The timecards were edited to falsely portray Plaintiffs and other technicians only working forty (40)

hours each week. The false timecards were then distributed to Plaintiffs and other technicians to sign.

60. Plaintiffs and other technicians were required to sign off on the inaccurate timecards. They believed they had no other choice. Fear of retaliation led them to comply with Defendant's illegal practices.

61. As a result of these practices, Plaintiffs and other technicians were consistently denied overtime wages. They were not compensated at a rate of "time and a half" their regular rate of pay for the hours they worked over forty (40) each week. This occurred for the duration of their employment.

62. There is no *bona fide* dispute that Plaintiffs and other similarly situated employees are owed overtime wages.

63. The duties performed by Plaintiffs and other technicians did not implicate any exemptions contained within the FLSA, MWHL, or the MWPCL.

64. Plaintiffs and others similarly situated retained no discretion in performing any of their assigned tasks. Their tasks consisted solely of manual labor.

65. Plaintiffs and other technicians were not paid correctly for their labor. They were denied payment for multiple hours of compensable work.

66. Defendant was well aware of the multiple hours that Plaintiffs and other technicians worked.

67. Defendant knew that Plaintiffs and other similarly situated employees consistently worked well over forty (40) hours per week.

68. Defendant required Plaintiffs and other similarly situated employees to record their time. Plaintiffs and other technicians were instructed to "clock in" and "clock out" at Defendant's

offices. This gave Defendant the ability to engage in other unlawful practices. For instance, Plaintiffs and other technicians were routinely instructed to not record all of their work hours. They were demanded to "punch in and out" to falsely show they only worked five (5) of the six (6) days they actually worked each week. Plaintiffs were also instructed to not record the time he worked on Saturdays and Sundays. Others similarly situated were required to follow these same instructions.

69.     Plaintiff Mackall and those technicians who performed their work primarily at the office had their time tracked directly by managers who oversaw their activities. Defendant also required Plaintiff Hunter and mobile technicians to track their time through company-issued cellular phones. There was a time keeping application on the phones which allowed technicians to accurately record their time. It was Defendant's practice to maintain these time records. Therefore, Defendants was well aware of the overtime hours its employees worked.

70.     Defendant suffered and/or permitted Plaintiffs and others similarly situated to work these overtime hours.

71.     Acting without good faith, Defendant withheld the overtime wages owed to Plaintiffs and other technicians through the enactment of the Forty Hour Plan.

72.     After years of Defendant enforcing the Plan, changes were subsequently made. This began in January of 2017, at which time Senior Vice President Steven Miggo ("Miggo") organized a meeting to discuss the illegalities of Defendant's pay methods. Plaintiffs and other technicians were present at this meeting. Defendant readily acknowledged that its technicians were not being paid correctly. Defendant was specifically referencing its technicians' failure to receive overtime wages as a result of the Forty Hour Plan.

73.     Subsequent to the meeting, Defendant's upper management officials modified their pay system. They began to pay Plaintiffs and others similarly situated correctly. This includes compensating Plaintiff and other technicians with overtime wages for the hours they work over forty (40) each week.

74.     Plaintiffs and other technicians are still owed considerable amounts in back wages. However, Defendant made no effort to reimburse Plaintiffs and other technicians for the numerous uncompensated overtime hours they worked previously. Defendant withheld these wages even after Plaintiffs and other technicians inquired about the overtime payments they failed to receive.

75.     Plaintiffs continued to complain about the wages they failed to receive as a result of the Forty Hour Plan. These complaints were made to Defendant's upper management officials, including Greg Byrd, a member of Defendant's corporate office. Despite their numerous complaints, nothing was done to compensate Plaintiffs and other similarly situated employees with the overtime wages they earned.

76.     Consequently, on behalf of themselves and all those similarly situated, Plaintiffs seek the wages to which they are entitled and other available relief through this Complaint.

## FLSA COLLECTIVE ACTION ALLEGATIONS

77.     Plaintiffs and other similarly situated employees work or worked as technicians for Defendant. Their duties centered on automobile glass repair and replacement.

78.     The FLSA requires employers to compensate non-exempt employees such as Plaintiffs and others similarly situated with overtime wages for all hours worked over forty (40) in a workweek.

79.     Defendant knew that Plaintiffs and other similarly situated employees did not qualify for any exemption to the FLSA's overtime provision.

80.     Defendant knew that Plaintiffs and similarly situated employees typically worked over forty (40) hours per week.

81.     Defendant suffered and/or permitted Plaintiffs and other similarly situated employees to work more than forty (40) hours per week.

82.     Defendant knew or should have known that Plaintiffs and other similarly situated employees were entitled to overtime pay for all hours worked over forty (40) in a workweek.

83.     Regardless of the number of hours Plaintiffs and other similarly situated employees worked, Defendant did not pay them any additional pay for working over forty (40) hours.

84.     Pursuant to the FLSA, Plaintiffs commence this collective action against Defendant on behalf of themselves and those similarly situated.

85.     Plaintiffs demand damages reflecting an overtime rate of not less than one and a half (1.5) times their regular rate of pay for all hours worked over forty (40) in any workweek within the applicable statute of limitations.  Plaintiffs make these same demands on behalf of all members of the putative Collective class.

86.     Plaintiffs consent to be party Plaintiffs in this matter.  Plaintiffs' consent forms are attached to this Complaint as Exhibits A-B.

87.     It is likely that other individuals will join Plaintiffs during the litigation of this matter and file written consents to "opt in" to this collective action.

88.     There are numerous similarly situated current and former employees of Defendant that have been harmed by Defendant's common scheme to underpay its employees and violate the FLSA and are thereby fit for membership in the Collective class of similarly situated employees.

89.     These similarly situated persons are known to Defendant and are readily identifiable through Defendant's records.

90.     Many of these similarly situated employees would benefit from the issuance of court-supervised notice, granting them the opportunity to join this lawsuit as members of the Collective class.

91.     Upon information and belief, other similarly situated employees will choose to join Plaintiffs in this action against Defendant and opt in to this lawsuit to recover unpaid wages and other available relief.

**CLASS ACTION ALLEGATIONS UNDER MARYLAND WAGE LAWS**

92.     Plaintiffs bring this action Pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of themselves and other current and former employees that served as technicians for Defendant and were subject to the following practices and policies:

93.     Denial of overtime wages under MWHL for hours worked over forty (40) in a single workweek; and

94.     Denial of all wages owed to Plaintiffs and other similarly situated technicians at the termination of their employment in violation of the MWPCL.

95.     The classes Plaintiffs seek to represent are defined as:

*MWHL Class*

> All individuals who are or were employed by Defendant as technicians for any period ranging from three (3) years prior to the filing of this instant action to the present, who were paid on an hourly basis, but who were not paid an overtime rate of time-and-a-half their regular rate for all hours worked over forty (40) in a workweek in violation of MWHL.

*MWPCL Class*

> All individuals who were, but are no longer, employed by Defendant as technicians for any period ranging from three (3) years prior to the filing of this instant action to the present, who were paid on a hourly basis but who were not paid an overtime rate of time-and-a-half their regular rate for all hours worked over forty (40) in a

workweek in violation of MWHL and thus did not receive all wages owed to them before the termination of their employment with Defendant in violation of the MWPCL.

96. *Numerosity:* The individuals in the class are sufficiently numerous that joinder of all members is impracticable. Although the precise number of such individuals is currently unknown, the class includes dozens of employees who are readily identifiable through Defendant's pay records. Defendant employed dozens of technicians in the state of Maryland and across the United States through its technicians. Consequently, numerosity exists.

97. *Commonality:* There are questions of law and fact common to the classes. Among the common questions of law and fact applicable to Plaintiffs and the classes are:

    i. Whether the MWHL Class is similarly situated because they all performed the same basic duties and were subject to Defendant's common policy and practice of not paying them overtime;

    ii. Whether Defendant employed the MWHL Class within the meaning of MWHL;

    iii. Whether Defendant violated MWHL by failing to pay Plaintiffs and the MWHL Class overtime compensation for hours worked in excess of forty (40) hours per workweek;

    iv. Whether Defendant's violations of MWHL were willful;

    v. Whether Defendant employed the MWPCL Class within the meaning of the MWPCL;

    vi. Whether Defendant failed to provide Plaintiffs and other members of the MWPCL Class with all wages due at the time their employment ended in violation of the MWPCL;

    vii. Whether Defendant's violations of MWPCL were willful; and

viii. Whether Defendant is liable for damages claimed herein, including but not limited to, compensatory, liquidated or treble, statutory, interest, costs and attorneys' fees.

98. *Typicality:* Plaintiffs' claims are typical of those of the classes. Specifically, each and every class member of both the MWHL Class and the MWPCL Class worked as technicians for Defendant. Each and every MWHL Class member was required to work well over forty (40) hours per workweek to keep up with Defendant's imposed schedule. Each class member was paid an hourly rate and commission that did not adequately compensate them for their time. Every member of the MWPCL Class failed to receive all wages owed to them at the end of their employment. As a result, each and every class member suffered the same harm. This was due to Defendant's failure to pay a proper overtime premium for all hours worked in excess of forty (40) hours per workweek and the subsequent failure to pay to Plaintiffs and other members of the MWPCL Class all wages owed to them at the conclusion of their employment. This constitutes a direct violation of MWHL, as well as a subsequent violation of the MWPCL.

99. *Adequacy:* Plaintiffs will fully and adequately protect the interests of the classes. They seek the same recovery as the classes, predicated upon the same violations of the law and the same damage theory. Plaintiffs have also retained counsel who are qualified and experienced in the prosecution of statewide wage and hour class actions. Neither Plaintiffs nor their counsel have interests that are contrary to, or conflicting with, the interests of the classes.

100. *Predominance:* The common issues of law and fact predominate over any individual issues. Each class member's claim is controlled by Maryland's wage and hour statutory scheme and one set of facts. This is based on Defendant's failure to pay overtime as required by MWHL and its subsequent failure to pay all wages due at the end of an individual's employment as required by the MWPCL. Similarly, the damages are eminently certifiable in that Defendant's records will provide

the amount and frequency each class member was paid as well as the amount of time each class member worked.

101.     This action is maintainable as a class action.  The prosecution of separate actions by individual members of the classes would create a risk of inconsistent or varying adjudications with respect to individual members of the classes.   This would establish incompatible standards of conduct for Defendant.  If they were to pursue their claims separately, the numerous adjudications that would be required to protect the individual interests of the class members would constitute a considerable drain and burden on judicial resources.

102.     Accordingly, the Court should certify the proposed classes.

## CAUSES OF ACTION AND VIOLATIONS OF LAW

### *Against Defendant Safelite Group, Inc.*

**Count I.** ***Violation of the FLSA: Failure to Pay Overtime Wages to Plaintiffs and all Members of the Collective Class Who, During the Course of this Matter, Opt-In to the Suit by Submitting their Consent Forms to Become Party Plaintiffs***

103.     Plaintiffs hereby fully incorporate in this Count all allegations contained within Plaintiffs' Complaint.

104.     Plaintiffs are entitled to overtime under 29 U.S.C. § 207(a), which provides that employers must compensate their employees for hours worked in excess of forty (40) in a workweek at a rate of not less than one and one-half (1.5) times the regular rate at which they are employed.

105.     As described above, Plaintiffs have not received from Defendant compensation reflecting the prescribed overtime wage rate for hours worked in excess of forty (40) in a week.

106.     Defendant willfully and intentionally failed to compensate Plaintiffs properly for the overtime wages they are owed.

107.     There is no *bona fide* dispute that Plaintiffs are owed overtime wages for work performed for Defendant.

108.     All members of the putative Collective are similarly situated to Plaintiffs and have suffered the same and/or similar harm resulting from the same policies and practices complained of in this Complaint.

109.     Under the FLSA, Plaintiffs and all members of the Collective are entitled to additional wages from Defendant to compensate them for hours worked in a workweek in excess of forty (40) at a rate of one and one-half (1.5) times Plaintiffs' and each member of the Collective's regular hourly wage rate.

## Count II. *Violation of MWHL: Failure to Pay Overtime Wages to Plaintiffs and All Members of the MWHL Class, to be Certified by Motion During the Course of this Matter*

110.     Plaintiffs hereby fully incorporate in this Count all allegations contained within Plaintiffs' Complaint.

111.     Pursuant to Maryland Labor and Employment Code Ann. § 3-415, each employer shall pay an overtime wage of at least one and one half (1.5) times the regular hourly rate; furthermore, pursuant to Maryland Labor and Employment Code Ann. § 3-420(a), an employer shall compute the wage for overtime under § 3-415 on the basis of each hour over forty (40) that an employee works during one (1) workweek.

112.     Plaintiffs have not received proper compensation from Defendant reflecting the prescribed overtime wage rate for hours worked in excess of forty (40) in a week.

113.     Defendant willfully and intentionally did not compensate Plaintiffs for the overtime wages they are owed.

114.     There is no *bona fide* dispute that Plaintiffs are owed overtime wages for work performed for Defendant.

115. All members of the MWHL Class are similarly situated to Plaintiffs, and have suffered the same harm resulting from the same policies and practices complained of in this Complaint.

116. Under MWHL, Plaintiffs and members of the MWHL Class are entitled to additional wages from Defendant for all overtime hours worked at a rate of one and one-half (1.5) times Plaintiffs' and each MWHL Class member's regular hourly wage rate.

**Count III. *Violation of the MWPCL: Failure to Pay Wages Owed at the Termination of Their Employment to Plaintiffs and to All Members of the MWPCL Class, to be Certified by Motion During the Course of this Matter***

117. Plaintiffs hereby fully incorporate in this Count all allegations contained within Plaintiffs' Complaint.

118. Plaintiffs are entitled to wages under the Maryland Wage Payment and Collection Law, Md. Code Ann., Lab. & Empl. §§3-501 *et seq*., which provides that each employer shall pay an employee all wages due for work that the employee performed before the end of employment, on or before the day on which the employee would have otherwise been paid the wages.

119. In accordance with §3-505(a), Plaintiffs have not received compensation from Defendant for all wages owed for work performed before the termination of their employment. This is specific to Defendant's failure to pay Plaintiffs the overtime wages that they are entitled to. Similarly, Defendant failed to pay the members of the MWPCL Class correctly in the same manner.

120. Defendant willfully and intentionally did not compensate Plaintiffs or the members of the MWPCL Class for the wages owed to them and continued to violate the MWPCL, even after Plaintiffs informed Defendant of the violation.

121. All members of the MWPCL Class are similarly situated to Plaintiffs and have suffered the same harm resulting from the same policies and practices complained of in this Complaint.

122. Under the MWPCL, there is no *bona fide* dispute that Plaintiffs and the MWPCL Class are owed wages for work performed while employed by Defendant.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and others similarly situated, pray for the following relief:

a) In accordance with 29 U.S.C. § 216(b), designation of this action as a collective action on behalf of Plaintiffs and those similarly situated;

b) In accordance with Rule 23 of the Federal Rules of Civil Procedure, designation of this action as a Maryland state law class action on behalf of Plaintiffs and all members of the proposed classes;

c) Ordering Defendant to disclose in computer format, or in print if no computer readable format is available, the names, addresses and emails of all those individuals who are similarly situated and permitting Plaintiffs to send notice of this action to all those similarly situated individuals;

d) Designating the named Plaintiffs to act as class representatives on behalf of all similarly situated employees for both the FLSA Collective class and the Maryland state law classes;

e) Judgment against Defendant for its failure to pay Plaintiffs, those similarly situated, and all those appropriately joined to this matter in accordance with the standards set forth by the FLSA;

f) Judgment against Defendant for its failure to pay Plaintiffs, the members of the MWHL Class, and all those appropriately joined to this matter in accordance with the standards set forth by MWHL;

g) Judgment against Defendant for its failure to pay Plaintiffs, the members of the MWPCL Class and all those appropriately joined to this matter in accordance with the standards set forth by the MWPCL;

h) Judgment against Defendant and classifying its conduct as willful and not in good faith;

i) Judgment against Defendant and classifying Plaintiffs, the Collective and the Classes as non-exempt employees entitled to protection under the FLSA, MWHL and the MWPCL;

j) An award against Defendant for the amount of unpaid overtime wages owed to Plaintiffs, members of the Collective, members of the MWHL Class, and all those appropriately joined to this matter calculated at a rate that is not less than one and a half (1.5) times Plaintiffs' and others' respective regular hourly rate for all overtime hours worked;

k) An award of liquidated or trebled damages equal to, or double, the total amounts of unpaid wages owed to Plaintiffs, members of the Collective, members of the classes, and all those appropriately joined to this matter, whichever is deemed just and equitable by this Honorable Court;

l) An award of reasonable attorneys' fees and all costs, plus pre-judgment and post-judgment interest, to be satisfied in full by Defendant;

m) Leave to add additional Plaintiffs to all Counts alleged herein by motion, through the filing of written consent forms, or any other method approved by this Honorable Court; and

n) All further relief deemed just and equitable by this Honorable Court.

## REQUEST FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs request that a jury of their peers hear and decide all possible claims brought on behalf of Plaintiffs and those similarly situated.

Respectfully submitted,

*/s/ Robert J. Leonard*
Robert J. Leonard, Esq. (07183)
rleonard@nichollaw.com
George E. Swegman, Esq. (19444)
gswegman@nichollaw.com
Benjamin L. Davis, III, Esq. (29774)
bdavis@nichollaw.com
The Law Offices of Peter T. Nicholl
36 South Charles Street, Suite 1700
Baltimore, Maryland 21201
Phone No.: (410) 244-7005
Fax No.:    (410) 244-8454

*Attorneys for Plaintiffs*